# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **I.T.**

**No. 18-1092** (Marion County 17-JA-170)

**and**

*In re* **H.S.**

**No. 18-1118** (Marion County 17-JA-171)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel Clarissa M. Banks, appeals the Circuit Court of Marion County's November 9, 2018, order terminating her parental rights to I.T. and the November 26, 2018, order terminating her parental rights to H.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem for I.T. ("guardian for I.T."), Frances C. Whiteman, filed a response on behalf of that child in support of the circuit court's order. The guardian ad litem for H.S. ("guardian for H.S."), Rebecca L. Tate, filed a response on behalf of that child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2017, the DHHR filed a child abuse and neglect petition alleging that petitioner's husband, J.S., sexually abused petitioner's daughter, I.T. The DHHR alleged that petitioner and I.T.'s non-abusing father, B.T., shared custody of I.T. Further, the DHHR alleged that H.S., petitioner and J.S.'s biological child, lived in their home as well. At that time, the DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

made no allegations against petitioner, as J.S. agreed to leave the home following the filing of the petition. The circuit court ordered petitioner and B.T. to cooperate with the DHHR and allow the DHHR to make announced and unannounced visits to their homes.

Thereafter, the DHHR filed an amended petition against petitioner alleging she failed to protect H.S. from J.S. "by allowing [him] to reside in the home with [her.]" The DHHR alleged the parents inflicted "mental and emotional abuse . . . by their actions leading to [H.S.] hiding under her bed to avoid [Child Protective Services] workers." The DHHR alleged that J.S.'s presence in the home at the time was in direct contravention to a voluntary protection plan petitioner executed at the beginning of the proceedings. Petitioner waived her preliminary hearing.

The circuit court held six adjudicatory hearings over seven months in 2018. I.T., age twelve, testified. The circuit court found her testimony was "strong and matter of fact regarding particular experiences to which she was subjected. [I.T.] was able to describe, in detail, the manner in which she had been touched and period of time during which such conduct happened." The circuit court found that, although the evidence was unclear as to exactly how many times J.S. touched I.T., the description was sufficient to indicate that I.T. "experienced this touching in her genital area" on "many occasions." The forensic psychologist who performed an assessment on I.T. testified that the child's testimony was consistent with their initial session together and the child's forensic interview. The circuit court found that the psychologist "stated that [I.T.] was a child of average intelligence and her actions and statements were consistent with a child that had been a victim of sexual assault." A nurse also testified regarding I.T.'s statements during a physical examination. The circuit court found that testimony "further shows that [I.T.] has been consistent in her allegations, and has not changed or recanted the allegations made against [J.S.]."

A sheriff's deputy testified that he accompanied two Child Protective Service ("CPS") workers to petitioner's home in March of 2018. The deputy testified that petitioner and J.S. were in the home. Further, J.S. stated that they were the only individuals in the home and that H.S. was at a relative's home. The deputy explained that, while following petitioner to a back bedroom, he heard a noise and discovered H.S. underneath a bed. The deputy explained that she began crying as he assisted her out from underneath the bed. The deputy further testified that the parents became "highly agitated" and that J.S. was handcuffed for officer safety. Both petitioner and J.S. were cited for obstruction. The CPS workers corroborated the deputy's testimony. Further, the CPS workers agreed that petitioner was told not to allow J.S. to have contact with H.S., which petitioner later denied.

Petitioner testified in defense of J.S, stating she did not believe that he sexually abused I.T. Petitioner testified, "I don't believe these things, plain and simple. That's just how it is. I don't believe this at all. I can only tell you . . . how they've interacted with each other. I'm telling you this, I don't believe this happened." The circuit court found that petitioner disregarded the voluntary protection plan as alleged in the amended petition. Thus, the circuit court perceived that petitioner was biased in favor of J.S. and her testimony "did little to detract from the testimony" of I.T. and the forensic psychologist. Finally, J.S. testified and denied the allegations that he sexually abused I.T.

Ultimately, the circuit court found "that there [was] clear and convincing evidence that [I.T.] suffered sexual abuse by [J.S.] while in the custody of [petitioner] . . . and another child residing in the home was [H.S.]" Accordingly, the circuit court found that H.S. was also at risk of abuse under West Virginia Code § 49-1-201.[2] Further, the circuit court found that petitioner allowed H.S. to have contact with J.S. and, therefore, violated the voluntary protection plan. The circuit court adjudicated petitioner as an abusing parent and the children as abused children. Further, the circuit court found that H.S. had "separate interests from [I.T.]" and appointed H.S. a separate guardian ad litem.

The circuit court held the final dispositional hearing in October of 2018, and the DHHR presented testimony from CPS workers that petitioner continued to believe that I.T. was not sexually abused by J.S. The CPS workers testified that petitioner was not offered services due to her continued denial of abuse. Petitioner then testified that she had separated from J.S. and now believed that he sexually abused I.T. However, petitioner admitted that she never informed the DHHR of this change. Further, petitioner admitted that she did not seek services to remedy the conditions of abuse and neglect on her own.

Ultimately, the circuit court found that petitioner "never expressed her change of heart [regarding I.T.'s statements that she was sexually abused] to anyone and she was unable to articulate the reasons she now believes her daughter." The circuit court found that petitioner's testimony was not credible and noted this Court's prior holding that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Consequently, the circuit court terminated petitioner's parental rights finding that it was in the children's best interests. It is from the circuit court's November 9, 2018, dispositional order regarding I.T. and its November 26, 2018, dispositional order regarding H.S. that petitioner now appeals.[3]

---

[2]The relevant portion of West Virginia Code § 49-1-201 provides that an abused child is one

> whose health or welfare is . . . harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child *or another child in the home.*

(Emphasis added.)

[3]H.S.'s father's parental rights were also terminated below. I.T. has achieved permanency in the custody of her non-abusing father, B.T. According to the parties, the permanency plan for H.S. is adoption in her relative foster placement.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less restrictive dispositional alternative. Petitioner asserts that the circuit court should have either granted her an improvement period or terminated only her custodial rights. We disagree. West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, as the circuit court correctly noted in its dispositional hearing, a parent's failure to acknowledge the truth of the basic allegations makes the problem untreatable and an improvement period an exercise in futility. *See Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363. Here, petitioner stated adamantly throughout the vast majority of the proceedings that she did not believe I.T. was sexually abused by J.S. and that I.T. lied during her testimony. Although petitioner testified at the final dispositional hearing that she believed I.T., the circuit court found her testimony was not credible. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). In fact, we agree with the circuit court that petitioner's testimony was questionable as she could not explain when she began to believe I.T. or why she failed to mention her change of heart to the DHHR. Accordingly, we find no abuse of discretion in the circuit court denying petitioner's motion for an improvement period.

Further, the evidence supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be

substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) provides that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, the record supports a finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner did not demonstrate that she believed the conditions of abuse and neglect. Petitioner refused to credibly acknowledge that J.S. sexually abused I.T. and, therefore, the conditions of abuse could not be corrected. Likewise, petitioner's tendency to disbelieve her children demonstrated her inability to protect her children and placed them at risk of continued harm if placed in her custody. As such, the record also supports a finding that termination of petitioner's parental rights was necessary for the children's welfare.

Finally, although petitioner argues that the circuit court could have terminated only her custodial rights as a less-restrictive alternative to termination, this Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Again, the record supports the requisite findings that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected and that termination was necessary for the welfare of the children. Accordingly, we find no abuse of discretion in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 9, 2018, dispositional order regarding I.T. and its November 26, 2018, dispositional order regarding H.S. are hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison